Good morning, your honors. My name is Ben Coleman. I represent the appellant, Christopher George. I wanted to focus on the sentencing guidelines, issue the six-level increase for causing substantial financial hardship. I think there are essentially two theories that were put forth in support of the increase. One I call the lost home theory, and the other I call the lost fee theory. I'll start with the lost home theory because I think that was really what the district court relied on, or at least that's what she seemed to rely on. There are two main problems with the lost home theory. The first is that the government did not produce evidence that 25 victims lost their homes, so that can on its own satisfy the six-level increase. The second problem with the theory is that I think the government now concedes that they have to show at least but-for causation under the Supreme Court's Burrage Test. And there were no findings, there's been no evidence to show that the few victims who did lose their homes lost them as a result, or the scheme was a but-for cause of them losing the homes. And we gave some examples in the briefs of some of these victims who did lose homes. They were already well behind on their mortgage payments. The homes were underwater. Their income did not even meet the monthly payments. There was no way these people were going to keep their homes no matter what. So the lost home theory has got those two fundamental flaws, and so I don't think that can support the six-level increase. The other theory that the government has espoused on appeal is the lost fee theory, that these victims lost $1,000 to $3,000 generally. That was the sum that they paid to 21st Century for their purported services, and that that caused them substantial financial hardship. Once again, I think we have a causation problem. There's no evidence that's been presented that the loss of this relatively minimal fee is what caused substantial financial hardship. You say the fee is relatively minimal, and maybe to some people it would be, but the victims of this scheme were people who were already having trouble making their mortgage payments, and to someone in that situation, $1,500 to $3,000 is a lot of money, isn't it? It may be, but I think, again, we're talking about a causation problem. Well, the causation is that they paid the fees to the fraudulent scheme. Why? It seems like there's a direct causal link between the fees that the fraudulent scheme collected from these people and their loss of the fees that they paid. Well, the first argument and why based on causation is that I think what Your Honor is articulating is that these people were already suffering substantial financial hardship. I mean, the scheme didn't cause the problem. They were already behind on their mortgage payments. They couldn't afford to stay in the homes. And yes, the $1,500 fee, let's say, would have been something that any of us would have wanted to maintain, but it's just not what caused the substantial financial hardship for the victims. So is it your view that if someone is already financially struggling, that means that they're experiencing hardship, and therefore, no matter what you steal from them, you're not causing hardship because they were already in hardship? I mean, that seems like an odd rule. I do believe that that's the way the guidelines define it. I mean, the commentary to the guideline discusses having to change your retirement plans, let's say, or having to change your living situation because of the loss. And these people already had to change their living situation. I don't think generally someone is not going to change their retirement plans over a $1,500 loss. And you have to also remember that these victims were victims that took on mortgages worth hundreds of thousands of dollars. I mean, a $1,000 to $3,000 loss for a homeowner, I mean, that's standard. The roof is leaking. That's $1,000 to $3,000, probably much more. You need to fix the fence. The air conditioner goes out. The hot water heater, you need a new hot water heater. I mean, all these are sums that would be well beyond $1,000 to $3,000 that any homeowner should be expected to undertake, and that's what these people did. So to think that the fee, this relatively minor fee, is what causes substantial financial hardship, I don't think the government showed that, and they certainly didn't come up with proof that individuals said, well, this $1,000 to $3,000 put me in so much more of a worse situation than I already was in. I mean, there was no proof of that. In addition, the guideline itself, I mean, the guidelines have $6,500 as sort of a base level of what is a type of loss that would trigger an increase. I mean, these losses are less than half of what the minimal $6,500 loss that's required under the guidelines to trigger any type of increase at all. I mean, even if we were to agree with you as an original matter, I mean, it doesn't necessarily follow that it was an impermissible exercise of the district court's discretion here after looking at all of the facts to reach the conclusion it did. So how do you get to be able to say that it was an abuse of discretion? Well, our first position is that de novo review applies because the district court just made inadequate findings, and that's something that the court looks at de novo. I mean, I'm not sure how the court, based on the evidence that was submitted and the findings frankly are not clear or very extensive and don't even identify 25 people, I'm not sure how the court can say that under de novo and even abuse of discretion review that the district court adequately exercised its discretion. At the very least, I would think the court, to have adequately exercised its discretion, would have to set forth the 25 victims that suffered a substantial financial hardship with some explanation as to causation. And we just have a general sort of omnibus finding that there was substantial financial hardship and there was causation without any articulation. I mean, I'm swinging at a moving target and a general target. I don't even know which victims we're discussing. So whether the court's looking at it under abuse of discretion or de novo, I think that it's reversible error. I mean, we certainly believe that it's a de novo standard given the lack of findings. But even if it's abuse of discretion, that would be an abuse of discretion to fail to articulate so that this court can look at did the district court exercise its discretion appropriately based on whatever findings it had made. And this court really can't do that based on these findings. So for that reason, I think the loss fee theory, both theories don't hold water. And if there are no other questions, I'll save the remaining time. Very well, thank you, Mr. Hanke. Good morning, Your Honors. May it please the Court, Aaron Ketchel for the United States. The district court did not err in finding that 25 or more victims suffered a substantial financial hardship when the government presented evidence of such hardship for at least 37 individuals. Moreover, this fraud scheme was unique in that a scheme that targeted over 4,900 individuals was deliberately designed to cause a substantial financial hardship for its victims. The court did not err in making those factual findings, which we contend is reviewable on a clear error standard, did not err in imposing the correct guideline enhancement, and did not err in imposing a within guidelines substantively reasonable sentence. Now, would the government agree, though, that some of these individuals were harmed to different degrees? Is that correct? Certainly, Your Honor. And so when you say there were, what did you say, 37 that qualified as substantial harm? There were 37 specific victims who were identified and presented to the court that we contend identified that suffered substantial financial harm. And is there a district court finding that, you know, number 37, whoever suffered the least amount of harm, that that actually was serious financial harm? I don't think the court articulated, went victim by victim to identify which victims suffered which harm, and no circuit has required a district court to enumerate the specific victims that it was reviewing and considering that. Well, but wouldn't it need to at least set the baseline? And that's the concern is if, I mean, because presumably the government, we could uphold the sentence if we found that, you know, we don't think that 37 were substantially, there was serious financial harm, but, you know, as long as it was 25. And I'm wondering if there's actually an ability to do that or what the district court did to say, hey, 3,000 is the cutoff, 2,000 is the cutoff, 5,000 is the cutoff. I don't think the court needed to set such a cutoff, Your Honor. And I think what the court did here was find that the losses suffered by the victims far exceeded the standard. In Minhas, the Seventh Circuit opinion, the court identified defined substantial in this context as a very wide range of harm, ranging from non-minimal, non-trivial loss, all the way to catastrophic loss, such as losing a home. Here, given that the evidence presented that 21st Century bought lists of individuals who were facing foreclosure, and those were the people they targeted as victims in this case. These were people on the brink of losing their homes, not individuals who could afford to repair their roof, repair their fence. These were people who were desperately trying to hold onto their homes. And 21st Century went to those individuals and told them, stop paying your mortgage, pay us instead, and we'll take care of you. They did that, and by not paying their mortgages, they either, and what the district court found was not that they had to lose their homes. What the district court noted in the long colloquy that it had in this argument was that 21st Century required people to stop paying their mortgages as part of the fraud scheme. And not paying their mortgages certainly had an impact, at the very least, on their credit, which is a factor that's enumerated under Comment 4 to 2B1. So you think, is the government's position that impact on the credit in and of itself is substantial, enough substantial serious financial harm to qualify for the enhancement? A difficulty in obtaining credit is expressly referenced under 2B1.1 Comment 4, and that is a non-exhaustive list of factors. I would also note that in the Castaneda-Pozo decision out of the 11th Circuit, that substantial harm the court found involved stealing money orders for amounts less than $1,000 of victims who were near the time of them paying rent. So what the courts have found is that the court, the district court, needs to look at the individual circumstances of the victims here. And what this court and other circuits have held routinely is that the district court may also infer the number of victims based on the class of victims that were affected here. And not only did the government present evidence of 37 specific victims, but the overwhelming evidence established that there were classes of victims here who were similarly harmed. As I said, this fraud was somewhat unique in that not only did they target distressed individuals already, but they also told individuals that they should stop paying their mortgages. The consequences, I'm sorry. I just wanted to ask, you said a moment ago that the district court doesn't need to identify particular victims, but can use a sort of statistical inference, I take it, about the class. What case most clearly supports that proposition? A few, Your Honor. Lorienti out of this circuit is a case that says that the court may infer loss amount from, may infer loss amount. In addition, the Pham decision, which we cite in our brief, suggested that the court could infer the number of victims. And then the, that's also a Ninth Circuit case. And then in Minhas, the Seventh Circuit said, quote, making an inference about an individual victim by virtue of his membership in a particular group is not necessarily problematic so long as a district court has reason to believe that the victims are in similar economic circumstances. Here, the class of victims was clearly defined. It was lists of people who were on the brink of foreclosure, which were, those lists were bought in order to target those individuals. All of the victims who testified during a five-week trial were presented similar distressed financial situations. The district court made a particular finding at sentencing that the scheme, quote, affected thousands. Most of them already in danger of losing their residences, including retired persons who had worked for decades, lacked formal education, and whose only asset was the house that they had acquired and lived in for decades. The district court made specific findings with regard to the similarly situated class of victims, as well as the scripts that the company used to target those victims inherently required the victims to suffer a substantial financial harm in this situation. But the court does not have to reach that finding, given that the government here presented the court with 37 reports, excuse me, 25 reports of interviews, which referred to 34 individual victims, three additional victims testified at trial to establish a substantial financial hardship. There's been no- And just so I'm clear, that 34 includes spouses, is that correct? That's correct, Your Honor. Now, did they all lose $3,000? Because my understanding is some of them lost less than that, and I think that's what I'm getting at is, you know, I understand if we went the route where you could take classes of individuals, that's probably enough, but if you start requiring individual evidence, is there a cutoff? And that's what I'm troubled with, is what if we say $3,000, okay, we think that's enough in these circumstances, but some of these individuals may have, you know, written a check and it didn't, you know, it bounced, and so they didn't actually lose much money. I mean, is $10 enough in this circumstance? I'm not sure the court should set a bright-line dollar amount for what can qualify as a substantial financial hardship, but if the defendant steals the last money out of a victim's bank account, government contends that that is pretty- Well, but there's really no evidence that they stole the last money out of the bank account. Well, for example, Your Honor, one of the examples you mentioned was that a check bounced, and that is true. The last check, the third check, which was, I believe, for $1,500 for one of the victims, bounced because of insufficient funds. So that is the last dollars out of the victim's account. And so to the extent that those are lower dollar amounts, it's certainly supported by the Eleventh Circuit decision in Castaneda, and the evidence here articulated that these were people on the brink of financial distress and could not afford to lose a single dollar. In addition, as I think a number of you have indicated, this should be reviewed with some deference to the district court in making those findings. We contend that it is a clear error standard because it is such a broad spectrum of harm that the district court is evaluating here, and every circuit that has considered it, five other circuits, have reviewed substantial financial harm under a clear error standard, and this court did in the unpublished Bosco Reno decision. Can I ask, were the victims all over the country, or were they? All over the country. And I'm just thinking about the fact that you count spouses separately. I mean, I guess I can see the logic of doing that in a community property state, but in a state that follows a rule of separate property, if one spouse loses money, why is the other spouse automatically a victim? Your Honor, we point to the plain language of the guidelines refers to persons and not group of victims. So under the plain language of the guidelines, we believe that individuals should be counted individually, and we also cite the four other circuits that have adopted that same interpretation. The 2nd, 7th, 8th, and 11th Circuit have all found that spouses should be kept separately under the guidelines, and that's at page 43. But I think the question is maybe they could be counted separately if they were both harmed, but are there circumstances where only one spouse would have been harmed but not the other spouse? In this situation, Your Honor, looking at the reports of interview that the district court had, these were people who were cohabitating, who were both on the brink of losing their joint home that they were living in together, and so both of these individuals were harmed. I see that my time has expired, and I'll thank the Court. Thank you very much. Mr. Coleman, you've got a little over three minutes. Thank you. There have been several new theories that continue to be articulated, which I think is part of the problem here. The spouse theory was never argued below. First time it came up was in the government's brief on appeal. The argument's been waived, and, of course, there are no findings below because the argument was never even made below, so that's why this Court has no findings about was it a community property state, how was the spouse harmed, because it was never argued before. Well, but the district court found 34 individuals that were harmed, right? District court never said anything about any number. So the government just presented the evidence of 34, and then the district court relied upon that. Well, the government presented it was 25 reports of memoranda. That was all they did. Now on appeal they've said there are an additional three victims that testified at trial, so now they're saying it's 28, and then if you add seven spouses or whatever it is, you get to 35 or whatever it is they're saying now. None of this was ever discussed below. The credit impact on credit, again, never raised before, never even raised in the brief on appeal. First time it's mentioned is today. You won't find a single report where you see a victim who says, my credit was 800 after this and went down to 400. There's nothing about the credit score. This argument is totally made for the first time an oral argument. It's been waived, and this is the problem. They're coming up with new arguments because what was done before was not sufficient. The government mentioned that what the district court found is that this was the only asset that these people had and they lost it. The assets were worthless. They were underwater. The assets were not worth anything. There's no evidence that somebody had a substantial amount of equity in the home and that because of this scheme they lost a home and lost all that equity. These were people that were underwater. The assets were worthless. They were behind on their mortgage payments. The scheme is not what caused them the loss to lose a substantial asset. What they lost was a $1,000 to $3,000 fee. That fee, we said it. But that could have expedited the loss, and isn't there a difference between someone who could have dragged it out and stayed in their home another eight months and instead now they can only stay in five or six? Again, we're hypothesizing. There are no findings that any victim could have stayed another six months, three months, eight months if it wasn't for this scheme. It does seem at least a little counterintuitive to say that to resist the application of a sentencing enhancement on the ground that the people you targeted or your client targeted were particularly vulnerable. It's a little odd to say the people I was going after had so very little that what I stole from them shouldn't really count. Well, there are two responses. One is there's a separate guidelines enhancement for a vulnerable victim. That's a two-level increase, not a six-level increase. So what they want is they want the big one. They want the six-level increase. And the six-level increase is specifically for causing, being the but-for cause of substantial financial hardship. That's what the commission stated for the six-level increase. There are other arguments as to why the vulnerable victim two-level doesn't apply, but maybe they could get a two-level increase out of this, but to give them the six-level increase when that's not what the guidelines say we believe is erroneous. Thank you. Thank you, Mr. Coleman. Thank you both for your argument in this case. This matter is submitted.
judges: Owens, Nelson, Miller